FILED _____ ENTERED _____ Honorable Marsha J Pechman
LODGED _____ RECEIVED

AUG 0 2 2001

AT SEATTLE
CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

CV 01-00775 #00000066

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| RAHN D. JACKSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>MICROSOFT CORPORATION,<br><br>Defendant. | CASE NO. C01-775P<br><br>**DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE ALL CLAIMS OF PLAINTIFF RAHN D. JACKSON**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Noted for Motion Docket:  Friday, August 31, 2001** |

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

## TABLE OF CONTENTS

Page

I.    INTRODUCTION .......................... ......... . .... ...  .. ................................ ... ... ....... .. 1

II.    FACTUAL BACKGROUND. . ...... ... . ..  . .... . .   . . .... ........................  .... ..... ...... 3

    A.    Jackson Retained Stolen Property Belonging To Microsoft ....... ......................... 4

        1.    The Stolen CD Contains Privileged Attorney-Client Communications, As Well As Highly Sensitive Trade Secrets And Proprietary Information.......... ..............  ............. ...................................... 4

        2.    Jackson Lied About How He Received This CD............... .... .... .. . .. .. . 5

        3.    Jackson Admitted That He Knowingly Received Stolen Property And That It Is Against The Law To Receive Stolen Property . .................. 6

        4.    Jackson Gave A Copy of Documents From the Stolen CD To His Attorneys For Use In Devising Their Litigation Strategy And Discussed The Contents With Others, Including Plaintiff's Counsel And Co-Plaintiff Tanya Barbour, Who Is Represented by the Same Counsel... ..... .. ..... ......  ... ..................................  ....... ...................... 8

        5.    After Filing His Lawsuit, Jackson Tore Up And Shredded Portions of Documents Responsive to Discovery Requests And Pertinent to Claims and Defenses in the Lawsuit ............................... ..... ...  ........... ..... 9

        6.    Jackson Lied To The Microsoft Representatives, Covering Up The Fact He Had Confidential Microsoft Documents In Violation of His Employee Non-Disclosure Agreement ..... ................................... 10

III.    JACKSON'S CONDUCT WARRANTS DISMISSAL OF HIS CASE .......... ............ ... 11

    A.    Dismissal Is The Only Appropriate Response To Jackson's Repeated Criminal Conduct ............................................................... ..... ....... ..... ............. 11

    B.    The Consequences Of Jackson's Misconduct Cannot Be Erased By Any Other Possible Response.... ....... . .. ............................................ ..... ...... ...  ...... 14

IV.    CONCLUSION......................................................................... .. ..... .... .............. 15

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-1-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone   (213) 683-6000
Facsimile   (213) 627-0705

# TABLE OF AUTHORITIES

Page

## CASES

Anheuser-Busch, Inc. v. Natural Beverage Distributors,
    69 F.3d 337 (9th Cir. 1995) ..................................................... 12, 14

Cabinetware Inc v. Sullivan,
    1991 WL 327959, at *4 (E.D. Cal. July 15, 1991) ................................. 13

Combs v. Rockwell Int'l Corp.,
    927 F.2d 486 (9th Cir. 1991) ......................................................... 13

Ed Nowogroski Insurance, Inc. v. Michael Rucker,
    137 Wash. 2d 427 (1999)............................................................ 15

Estrada v. Speno & Cohen,
    No. 99-56013, 2001 U.S. App. LEXIS 5225, at *12 (9th Cir. Mar. 30, 2001)................. 11

Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc ,
    144 F.R.D. 379 (C.D. Cal. 1992)..................................................... 12

In re Wisehart,
    281 A.D.2d 23 (N.Y App. Div. 2001) ................................................ 13

Link v. Wabash R. Co.,
    370 U.S. 626 (1962)............................................................... 3, 11

Lipin v Bender,
    644 N E.2d 1300 (N.Y. 1994)........................................................ 15

Miller v. Time-Warner Communications, Inc.,
    1999 WL 739528 (S.D.N.Y. Sept. 22, 1999)........................................... 13

National Hockey League       -   Club, Inc.,
    427 U.S. 639 (1976).............................................................. 11, 14

Synanon Church v. United States,
    820 F.2d 421 (D.C. Cir. 1987)....................................................... 14

United States v Hughes Aircraft Co ,
    67 F.3d 242 (9th Cir. 1995) ......................................................... 11

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-ii-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone (213) 683-6000
Facsimile (213) 627-0705

1

**TABLE OF AUTHORITIES**
(continued)

2                                                                        **Page**

3  United States v. Martin,
4     228 F.3d 1 (1st Cir. 2000) . . . . ...... ....................................... .... ... ...... .. . .... .............. 11

5  Wanderer v. Johnston,
      910 F.2d 652 (9th Cir. 1990) ................ . . . ............. ....................................... . . .... ... .... 11

6  **STATUTES**

7  18 U.S.C. § 1030.. .. .. ......................................... .... ............. ..................................... 12

8  18 U.S.C. § 1509.................................... . .. .. ... .. ............................................. .. .................... 12
9
   18 U.S.C. § 1832(a) ............................................. ........ ..................................................... ..... .... . .... 11
10
   18 U.S.C. § 1832(a)(5). ......................................................................................................... 12
11
   D.C. Code § 22-3811 .............................................................. ......... .. . .. .................................. 12
12
   D.C. Code § 22-3832 ........ ..................................................... ......... . .. ..... ....... .. ........................ 12
13
   Md. Ann. Code Art. 27, § 111 .................................. . ..... ... . ............................................... 12
14
   Md. Ann. Code Art. 27, § 341 ................. .................................................. ..................... 12

15
16
17
18
19
20
21
22
23
24
25
26

-iii-

1    **I.    INTRODUCTION**

2              Plaintiff Rahn Jackson willfully and defiantly obstructed justice by receiving

3    thousands of stolen documents and then destroying evidence that he knew would be detrimental

4    to his claims. He admits it  Dismissal of the lawsuit he intentionally tainted is the only

5    appropriate remedy.

6              To gain an advantage in this case, Jackson admits that he requested "help" and

7    then accepted from his co-conspirator (whom he refuses to name) a compact disc ("CD")

8    containing more than 10,000 e-mail and other documents stolen from his boss's computer. From

9    this misappropriation, Jackson garnered documents containing trade secrets about Microsoft's

10   business strategy vis-à-vis major competitors and, more to the point, communications between

11   Microsoft and its attorneys <u>about Jackson and his case</u>. No coincidence, Jackson procured the CD

12   of his boss's hard-drive <u>after</u> he had signed an employment offer letter from Sun Microsystems,

13   but <u>before</u> actually submitting his resignation to Microsoft. Indeed, Jackson received the stolen

14   material and then, a few hours later, quit his job and went to work for one of Microsoft's largest

15   competitors.

16             Nor is there any question this <u>entire</u> case – not just Jackson's claim – has been

17   compromised by Jackson's actions. Because he obtained the stolen property (including the

18   attorney-client communications regarding his claims) more than ten months ago, Jackson has had

19   ample time to review and commit these documents to memory. And, we must recall, Jackson has

20   positioned himself as the initial litigant and leader in this case. He traveled to Washington State

21   to meet with other Microsoft employees to offer his opinions about this suit and recount his

22   claims. (During his four-hour meeting with putative class members and others, Jackson "did a lot

23   of the talking." (Tr. 242:2-247:18.)) He brought six other plaintiffs into his lawsuit. He engaged

24   additional counsel. He filed an amended complaint, adding class-wide claims  And he did all this

25   after receiving and retaining possession of 10,000 stolen, confidential documents, including

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-1-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   attorney-client communications between his adversary and its counsel.  The ramifications of

2   Jackson's illegal actions tainting this case are staggering.

3      Jackson is not abashed about his actions; he does not regret his decision to accept

4   and disseminate (across state lines) more than 10,000 stolen documents.  To the contrary, Jackson

5   proudly tells us that he intends to use these documents to prosecute this case.

6      Stealing documents is not the extent of Jackson's bad acts.  After filing this

7   lawsuit, Jackson altered and destroyed relevant documents by tearing or cutting off portions of the

8   documents and then shredding the missing pieces.  Yet again, there is no dispute, no question that

9   Jackson altered these documents and destroyed evidence.  He admits it.

10     The totality of Jackson's admissions are stunning.  At his deposition, Jackson: (a)

11  admitted that the CD was stolen; (b) admitted that he knew the disc was stolen when he received

12  it; (c) acknowledged that the disc contained both privileged and commercially sensitive

13  information (including trade secret information about Microsoft's competition with Jackson's

14  new boss, Sun Microsystems); (d) admitted that he doctored documents he produced, and did so

15  with the intended purpose of preventing Microsoft from obtaining further discovery about those

16  documents; and (e) admitted that he intends to use all of the evidence of his crimes in prosecuting

17  this case.

18     Jackson's defiance is an appalling affront to this Court, due process, and the aims

19  of our justice system.  Nonetheless, at his deposition, Jackson actually expressed pride in his

20  felonies:

21     Q: [W]here did you get the CD from? (Tr. 52:18-19)

22     A: I got the CD from an employee at Microsoft.  (Tr. 53:14-15 )

23         *  *  *

24     Q: You received stolen property[?]

25     A Okay.  All right.  Well, I will use that evidence to advance the
       cause of erasing racism at Microsoft.  Yes, I will.  (Tr 439:2-5.)
26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-2-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1

2

3

4

> Q:   Do you believe that an employee who is discriminated against has a right to obtain stolen property from Microsoft?
>
> A:   Hmm, I do not believe in stealing  But I believe in doing anything without hurting individuals physically and otherwise, to erase racism at Microsoft. (Tr  434:7-13.)

5   In responding to discovery abuses, the Court has a broad array of weapons at its

6   disposal.  Courts typically seek to find the least onerous sanction that will accomplish the Court's

7   punitive and remedial aims.  Given the extent of the illegal activity that taints this case, however,

8   only one sanction can appropriately follow from Jackson's felonious insult to the Court and our

9   justice system.  Thus, pursuant to the Court's inherent authority "to manage [its] own affairs,"

10   Jackson's case must be dismissed.  Link v. Wabash R. Co., 370 U.S. 626, 630-31 (1962)

11   **II.   FACTUAL BACKGROUND**

12   Plaintiff Rahn Jackson sat for deposition in this employment discrimination suit on

13   July 26 and 27, 2001.  At the start of that deposition, Jackson produced documents in response to

14   Microsoft's discovery requests, including a CD and a limited number of documents printed from

15   that disc. (Tr. 52:5-53:15.)  According to Jackson, this disc contains at least 10,000 e-mails from

16   Microsoft's federal district office (he thinks there "could be" as many as 20,000 e-mails). (Tr.

17   56:1-14; 391:6-10.)  Jackson testified that he received this CD on September 28, 2000 – hours

18   before he and his counsel met with Microsoft's in-house and outside counsel, and one day before

19   he resigned from Microsoft and went to work for competitor Sun Microsystems. (Tr. 97:5-9;

20   98:6-14; 101:12-17; 280:14-18; 404:2-6; 469:12-15.)  Jackson provided a printed copy of some of

21   the documents on the CD to his attorneys. (Tr. 367:7-10; 373:1-6; 385:3-9.)  He did so, knowing

22   that confidential and privileged information was on that CD.  At the time of his deposition

23   Jackson admittedly already had spent approximately 30-40 hours over a one- to two-week period

24   reading the stolen materials. (Tr. 277:9-278:13.)

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-3-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1      **A.**     **Jackson Retained Stolen Property Belonging To Microsoft.**

2               **1.**     **The Stolen CD Contains Privileged Attorney-Client Communications,**

3                     **As Well As Highly Sensitive Trade Secrets And Proprietary**

4                     **Information.**

5          During his deposition, Jackson admitted that, in reviewing the pilfered documents,

6 he read e-mails authored by, among others, Richard Sauer (who, as Jackson recognized, is

7 Microsoft's in-house counsel assigned to the Jackson case), and Ellen Dwyer (who, as Jackson

8 also recognized, was Microsoft's outside counsel charged with defending the Company against

9 Jackson's claims). (Tr. 279:20-280:18; Tr. Vol. 1, 64:16-65:21.) <u>Jackson, in other words,</u>

10 <u>knowingly read communications by and between Microsoft's attorneys in which they discussed</u>

11 <u>his case</u>  In fact, the stolen disc contains a number of privileged Microsoft attorney-client

12 communications, including: (1) attorney-client privileged communications from Microsoft's legal

13 department giving legal advice to management regarding Jackson after he filed his lawsuit; and

14 (2) attorney-client privileged communications between Microsoft management and its legal

15 department seeking and/or providing legal advice on other issues. (Pete Hayes Declaration

16 ("Hayes Dec.") ¶ 4(a) and (b) )

17          In addition to these privileged communications, the stolen CD includes numerous

18 documents containing highly sensitive trade secrets and proprietary information (information, for

19 the most part, to which Jackson was not privy when employed at Microsoft). These include e-

20 mails containing proprietary information about Microsoft's customers, prospects and pricing, and

21 strategies for competing against Sun Microsystems — one of Microsoft's primary competitors

22 and the company with which Jackson accepted a job before leaving Microsoft. (Hayes Dec. ¶

23 4(c).) Microsoft estimates conservatively that, should it choose to use the stolen information that

24 Jackson received and read <u>after</u> he and Sun signed an employment contract, Sun would be well-

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-4-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   positioned to add a minimum of $5 million of government server business. (Id. at ¶ 5; Tr. Exh.

2   1.)

3           As of this writing – less than a week after receiving the purloined CD – Microsoft

4   has not been able to fully review the vast amount of stolen material contained on that CD.

5   Pursuant to its still-minimal review of the documents, however, Microsoft has been able to

6   ascertain that, in addition to attorney-client communications and trade secrets, the CD also

7   contains extremely private and confidential information about Jackson's coworkers   Thus, the

8   CD contains detailed performance evaluations, as well as documents spelling out the coworkers'

9   salaries, their bonuses, their stock options.

10          Jackson, of course, is aware that compensation data about other employees is

11   confidential personnel information that he was not authorized to possess. (Tr. 261:1-4.)

12          **2.     Jackson Lied About How He Received This CD.**

13          Jackson tells us that he obtained the stolen CD by asking an individual who knew

14   about his lawsuit against Microsoft "if there [was] anything that [this individual] can do to help

15   . . . [i]n this matter" (Tr. 57:6-15.)  Subsequent to this communication, said Jackson, the "help" he

16   had requested was offered:  "sometime later I received the CD in my box, in my mailbox."  (Tr.

17   59:3-19.)

18          <u>After</u> making these statements under oath, Jackson back-peddled, suddenly

19   claiming that he did not know who provided him with the CD:

20          Q:  Did you know who [the CD] came from?

21          A:  No, I didn't.  (Tr. 59:21-60:1)

22                     *         *         *

23          Q:  And then did you know who gave it to you?

24          A:  No, I did not. (Tr  60 9-11 )

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON
                    -5-
PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   But this testimony not only contradicted Jackson's prior testimony, in which he admitted he

2   received the CD after asking this co-worker for "help," but also was inconsistent with his

3   subsequent testimony.  Apparently unable to keep his stories straight, Jackson admitted that, after

4   receiving the CD in his mailbox, he personally thanked the individual from whom he previously

5   had sought assistance: "When they gave me the disk, I said thank you."  Acknowledging

6   Jackson's "thanks," the person responded, "you are welcome" or "no problem."  (Tr. 468:4-20.)

7   Finally, when asked to identify the individual who took the CD, Jackson refused, claiming that he

8   wanted to "protect [the individual's] career."  (Tr 52:18-54:13; 60:12-61:4; 209:13-210:6; 211:7-

9   9; 366:3-4; 536:12-537:15.)  This, of course, is a further indication that, contrary to his testimony

10  a few pages back, he knew who stole the documents.

11          In sum, Jackson is making a mockery of the judicial process, altering his story

12  with every turn of the transcript page.

13          3.      **Jackson Admitted That He Knowingly Received Stolen Property And**

14                  **That It Is Against The Law To Receive Stolen Property.**

15          Jackson unequivocally admitted during his deposition (1) that he knew the CD

16  data was stolen; (2) that he nevertheless accepted it; (3) that he is using the contents of the CD as

17  evidence in his case – and intends to continue doing so; and (4) that he has reviewed the CD,

18  culled the most relevant documents, printed them out, and given them to his lawyers.  (Tr. 79:3-

19  19; 277:9-278:13; 367:7-10; 382:4-8; 385:3-9.)  Jackson now tries to justify this astonishing

20  behavior by pointing out his desire to win this case:

21          Q:      Now, were you at all concerned that Microsoft or law enforcement
                    could take legitimate legal action against the individual who
22                  procured the documents from Microsoft's system and put them on
                    the CD that is in your possession?
23
24          A:      Of course.  (Tr. 432:15-21.)

25                          *       *       *

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO        -6-
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1        Q      Did you always understand, since you have been an adult, that receiving stolen property was a crime?

2

        A.     Yes, I did.

3

        Q:     Do you have any concern today that you are in possession of

4                 stolen property?

5        A:     I have concerns as a citizen, I have concerns as a former

6                 employee, but those concerns do not outweigh my concerns of what is taking place at Microsoft today in response to the allegations, in response to the retaliation and everything that is

7                 going on here today, Ms. Abell, to be quite honest with you.

8        Q:     So you think your view of what happened to you justifies your being in possession of stolen Microsoft property; is that correct?

9

        A:     I'm just doing whatever I can to protect my rights, to defend my

10                rights, and those like me. (Tr. 435:9-436:7.)

11                        *     *     *

12        Q:     And so if you need to obtain and retain stolen property in order to protect your rights, you believe you are justified in doing that so

13                 long as you do not harm somebody in a bodily fashion; is that correct?

14

Ms. Sperando [Jackson's counsel]:   Form.  That's not what he said.

15

        A:     No.  If I run across valuable information and evidence that will

16                help erase racism at Microsoft, then I will use that.

17        Q:     You will use stolen property in your view in order to do that; is that correct?

18

        A:     I will use that evidence as I have received it, as I did not steal it, I

19                received it.

20        Q:     You received stolen property.

21        A:     Okay.  All right.  Well, I will use that evidence to advance the cause of erasing racism at Microsoft.  Yes, I will.  (Tr. 438:8-

22                439:5.)

23             Jackson's testimony is stunning in its cynicism.  In an effort to win a case, says

24   Jackson, he is privileged to use stolen property, rifle through his coworkers' personnel

25   information, spy on attorney-client communications.  Indeed, he tells us that he took these

26   documents, not inadvertently, but as ammunition for the prosecution of his case.  Thus, given the

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-7-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1    breadth and extraordinary ramifications of Jackson's <u>intentional</u> misconduct, dismissal is

2    warranted   Simply put, Jackson cannot continue to prosecute an action he intentionally and

3    completely compromised.

4    **4.      Jackson Gave A Copy of Documents From the Stolen CD To His**

5    **Attorneys For Use In Devising Their Litigation Strategy And**

6    **Discussed The Contents With Others, Including Plaintiff's Counsel**

7    **And Co-Plaintiff Tanya Barbour, Who Is Represented by the Same**

8    **Counsel.**

9    Jackson provided documents printed from the stolen CD to his attorneys

10   approximately a week or two before his deposition:

11   Q:    When was the first time you gave to counsel any documents on the
     CD?

12

13                              *       *       *

14   A:    I FedExed them, I believe, last Tuesday or Wednesday . . . . It was
     either last week or the week before. (Tr. 79:3-19.)

15                              *       *       *

16   Q:    So you thought your counsel would go through all the material on
     the CD for you?

17

18   A:    Eventually.  Well, not the CD, but **I would eventually get the
     relevant information from that CD and provide it to counsel as
     I did.** (emphasis added) (Tr. 382:4-8.)

19

20   Thus, according to Jackson himself, counsel from both of the law firms representing him in this

21   suit received from him – and read – at least some of the privileged and other stolen documents.

22   (Tr  264:1-3; 519:18-21.)  Moreover, Jackson tells us that he had conversations with his counsel

23   about the CD.  (Tr  398:10-399:2.)

24   Jackson also shared the material with others.  As another example of his constantly

25   shifting testimony, Jackson initially testified that the <u>only</u> individuals who had seen any

26   documents on the CD were himself, his counsel, and the individual who provided him with the

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-8-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1    stolen CD.  Jackson subsequently admitted, however, that he also had discussed the contents of

2    the CD with a former colleague.  (Tr. 78:12-15; 375:1-4; 381:4-16; 398:10-399:3.)  Later, he

3    added that he showed this individual an e-mail he had printed from the CD.  (Tr. 377:21-378 4.)

4    (Jackson refused to disclose the name of this former colleague, or other information about their

5    communications, even though his counsel did not instruct him not to answer.  (Tr. 373:20-

6    375:10.))  Still struggling with the truth, Jackson later admitted that he also told Tanya Barbour,

7    another plaintiff in this action, about the CD.  (Tr. 401:14-403:11; 439:10-440:4.)

8            By the end of the day, Jackson finally admitted that his lawyers, two coworkers,

9    and a co-plaintiff had been privy to these materials in some way.  Given Jackson's veracity, there

10   may well be (many) others.

11           **5.      After Filing His Lawsuit, Jackson Tore Up And Shredded Portions of**

12                    **Documents Responsive to Discovery Requests And Pertinent to Claims**

13                    **and Defenses in the Lawsuit.**

14           In addition to the CD-related misconduct described above, Jackson admitted that,

15   after this litigation began, he destroyed or doctored relevant documents.  Yet again, Jackson's

16   testimony about this misconduct changed dramatically during the course of the deposition.  At

17   first, Jackson testified as follows:

18           Q:    Directing your attention to the documents that you produced in
                   Exhibit 13, there [are] several that have parts of the pages cut off
19                 with the scissors, tops of the documents, or ripped off by hand.
                   Did you remove the tops of these documents?
20
             A:    No.
21
             Q:    Do you know who did?
22
             A:    I'm assuming the provider of those documents to protect their
23                 confidentiality.  (Tr. 405:13-406:1.)

24   Thereafter, however, Jackson admitted that <u>he</u> was responsible for the damage to all but one of

25   these documents, and that he affected the alterations after filing his lawsuit.  With respect to

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON                                    -9-                PAUL, HASTINGS, JANOFSKY & WALKER LLP
                                                                            555 South Flower Street, Suite 2300
                                                                            Los Angeles, California 90071-2371
                                                                            Telephone  (213) 683-6000
                                                                            Facsimile  (213) 627-0705

1     Exhibit 15, for example, Jackson stated "I cut that particular one off," and shredded the portion he

2     cut off. (Tr. 407:4-408:17, Tr Ex. 15.) He explained that the information he cut off was "the

3     most important information that [he] wanted to conceal from [Microsoft]." (Tr. 408:18-409:19.)

4     Jackson also admitted that he ripped off the top left corners of Exhibits 17 and 18 (Tr 412:5-17;

5     413:1-414:2), and took scissors and cut off the tops of Exhibits 19 and 20, which he thereafter

6     shredded or discarded. (Tr 415:9-417:12.) He justified his conduct as protecting the

7     confidentiality of the provider. (See, e.g., Tr. 412:18-21; 408:18-417:12.) Significantly, Jackson

8     altered these documents long after his case against Microsoft had been filed. (Tr. 407:15-409:19;

9     412:12-17; 413:16-414:2; 415:9-416:1; 416:16-417.7.)

10           **6.**     **Jackson Lied To The Microsoft Representatives, Covering Up The**

11                   **Fact He Had Confidential Microsoft Documents In Violation of His**

12                   **Employee Non-Disclosure Agreement.**

13          Apart from the criminal implications of his conduct, Jackson also breached the

14     Microsoft Corporation Employee Non-Disclosure Agreement – an agreement he signed in order

15     to come to work at Microsoft. Pursuant to that Agreement, Jackson promised to return all

16     documents and other material containing or disclosing any confidential or proprietary technical or

17     business information upon the termination of his employment. (Tr. Ex. 21.)

18          During his exit interview, Jackson expressly told the Microsoft Human Resources

19     representative that he had returned all of Microsoft's property except for a printer. (Tr. 428:14-

20     19.) Yet again, he lied. After he quit, Jackson retained not only the stolen CD with his manager's

21     e-mail, but also several years of his own Microsoft e-mail on the hard drive of the laptop he

22     purchased from the Company. (Tr. 48:18-49:11 )

23

24

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-10-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone (213) 683-6000
Facsimile (213) 627-0705

1   **III.    JACKSON'S CONDUCT WARRANTS DISMISSAL OF HIS CASE.**

2        **A.    Dismissal Is The Only Appropriate Response To Jackson's Repeated**

3             **Criminal Conduct.**

4        A district court has the inherent power to dismiss a complaint if there has been

5   "flagrant, bad faith disregard of discovery duties." <u>Wanderer v. Johnston</u>, 910 F.2d 652, 656

6   (9th Cir. 1990) (citing <u>National Hockey League v. Metropolitan Hockey Club, Inc.</u>, 427 U S. 639

7   (1976)). This power is "governed not by rule or statute but by the control necessarily vested in

8   courts to manage their own affairs so as to achieve the orderly and expeditious disposition of

9   cases." <u>Link v. Wabash R.Co.</u>, 370 U.S. 626, 630-31 (1962). Further, a court may impose a

10  dismissal sanction, "not merely to penalize those whose conduct may be deemed to warrant such

11  a sanction, but to deter those who might be tempted to such conduct in the absence of such a

12  deterrent." <u>National Hockey League</u>, 427 U.S. at 643.

13        The Ninth Circuit has identified a number of factors relevant to a dismissal

14  sanction, including (1) the existence of extraordinary circumstances, and the presence of

15  willfulness, bad faith, or fault by the offending party, (2) the efficacy of lesser sanctions, (3) the

16  relationship or nexus between the misconduct drawing the dismissal sanction and the matters in

17  controversy in the case, and (4) the prejudice to the party victim of the misconduct. <u>Estrada v.</u>

18  <u>Speno & Cohen</u>, No. 99-56013, 2001 U.S. App. LEXIS 5225, at *12 (9th Cir. Mar. 30, 2001)

19  (default judgment case applying dismissal standard set forth in <u>United States v. Hughes Aircraft</u>

20  <u>Co.</u>, 67 F.3d 242, 247 (9th Cir. 1995)).

21        In this case, Jackson has admitted – in sworn testimony – to conduct which likely

22  constitutes numerous felonies, including (1) theft/misappropriation of trade secrets under 18

23  U.S.C. § 1832(a), a statute which was designed to prevent "employees (and their future

24  employers) from taking advantage of confidential information gained, discovered, copied or

25  taken while employed elsewhere," <u>see</u> <u>United States v. Martin</u>, 228 F.3d 1 (1st Cir. 2000),

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-11-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1    (2) conspiracy to commit theft/misappropriation of trade secrets 18 U.S.C. § 1832(a)(5),

2    (3) unauthorized access of a computer, 18 U.S.C. § 1030 (prohibiting in part unauthorized access

3    to a computer and obtaining information therefrom), (4) obstruction, 18 U.S.C. § 1509, and, (5)

4    under state law, theft/misappropriation (D.C. Code § 22-3811 & Md. Ann. Code art. 27, § 341),

5    receipt of stolen property (D.C. Code § 22-3832) and malicious destruction of property (D.C.

6    Code Ann. §§ 22-203 & Md. Ann. Code art. 27, § 111).

7            Jackson also has declared his intention to use the fruits of his crimes in pursuit of

8    money damages, and has expressed no remorse for his criminal conduct. To the contrary, in

9    Jackson's view, the end justifies the means. His felonies have been carefully considered and

10   well-planned; they have been numerous and repeated; he has solicited others to join his criminal

11   enterprise; and his felonies were directed – avowedly and unashamedly – to the merits of this

12   litigation. And, he says, he would do it again. One could hardly conjure a more calculated,

13   dramatic, outrageous affront to the Court.

14           Few cases parallel the facts in this case; few litigants are as brazen in their crimes

15   or are self-congratulatory enough to declare — repeatedly and under oath — that they knew the

16   conduct was illegal, but nonetheless intend to use doctored and stolen evidence in court. In

17   Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337, 348 (9th Cir. 1995), the

18   Ninth Circuit upheld the dismissal of a party's counterclaim following a pattern of lying — to

19   opposing counsel and to the court — and concealing documents. In response to this behavior,

20   the court was adamant: "It is well settled that dismissal is warranted where, as here, a party has

21   engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings."

22   In Hi-Tek Bags, Ltd. v. Bobtron Int'l, Inc., 144 F.R.D. 379 (C.D. Cal. 1992), the plaintiffs

23   agreed to limit dissemination of the defendant's confidential documents, but failed to comply

24   with their promise  Instead, they attached confidential pricing and sourcing information to an

25   opposition filed and served on codefendants, some of whom were defendant's competitors. The

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-12-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   court noted the potential damage done to defendant as a result of the disclosure, and

2   characterized the disclosure as "utterly inconsistent with the orderly administration of justice."

3   Similarly, in In re Wisehart, 281 A.D.2d 23, 25 (N.Y. App. Div. 2001), the

4   plaintiff stole privileged material from defendant's counsel while at a discovery conference;

5   plaintiff's lawyer was suspended from the practice of law for two years for accepting and using

6   the material  In affirming that discipline, the appellate court quoted the trial court's order

7   dismissing the case: "[T]he actions of the plaintiff and her attorney were so egregious [and] so

8   heinous that the only remedy . . . is to dismiss the lawsuit.  Otherwise, there is no meaning to

9   privilege, there is no meaning to conduct among attorneys, and there is no rule of law."  See also

10  Combs v. Rockwell Int'l Corp., 927 F.2d 486, 488 (9th Cir. 1991) (case dismissed for

11  falsification of deposition where plaintiff gave counsel permission to alter any of his deposition

12  responses, and despite his sworn statement to the contrary, he never reviewed either the original

13  or the altered deposition transcripts.").

14  Courts have also dismissed cases in which a party was responsible for the

15  spoliation of evidence.  In Miller v. Time-Warner Communications, Inc., 1999 WL 739528

16  (S.D.N.Y. Sept. 22, 1999), the plaintiff tried to alter documents, then lied about it at deposition

17  and in court.  The court dismissed her discrimination suit as a result.  "The question presented is

18  what the appropriate sanction is for plaintiff's spoliation of evidence and these repeated instances

19  of perjury.  Having weighed the seriousness of plaintiff's misconduct against the range of

20  sanctions that might be invoked, the Court concludes that the only appropriate sanction is to

21  dismiss the complaint."  Id. at *2.  See also Cabinetware Inc. v. Sullivan, 1991 WL 327959, at *4

22  (E.D. Cal. July 15, 1991) (entering default judgment on ground that "[d]estruction of evidence

23  cannot be countenanced in a justice system whose goal is to find the truth through honest and

24  orderly production of evidence under established discovery rules") (citation omitted), Synanon

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-13-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone (213) 683-6000
Facsimile (213) 627-0705

1   Church v. United States, 820 F.2d 421, 428 (D.C. Cir. 1987) (affirming dismissal of lawsuit

2   where the plaintiff "intentionally and willfully destroy[ed] discoverable material").

3           And lying under oath should bring the severest sanction   Jackson's deposition

4   shows that he "will say anything at any time in order to prevail in this litigation." Anheuser-

5   Busch, Inc., 69 F. 3d at 348. He forever will remain an inherently unreliable witness, thus

6   leaving this Court "no choice but to dismiss." Id.

7           The misconduct in the published cases pales in comparison to Jackson's criminal

8   scheme. None of these cases involved a party who – a self-appointed leader of six other named

9   plaintiffs and an entire putative class – was brazen enough to try to justify as a valid litigation

10  strategy both theft and document alteration. These facts are, so far as Microsoft has been able to

11  determine, unique, and uniquely aggravated. If dismissal was appropriate in the cases cited

12  above — indeed, if dismissal is ever warranted — plainly dismissal is warranted here.

13      **B.    The Consequences Of Jackson's Misconduct Cannot Be Erased By Any Other**

14          **Possible Response.**

15          As previously mentioned, dismissal is warranted by the gravity of Jackson's

16  misconduct alone, "not merely to penalize those whose conduct may be deemed to warrant such

17  a sanction, but to deter those who might be tempted to such conduct in the absence of such a

18  deterrent." National Hockey League, 427 U.S. at 643. But even if the Court were to look

19  beyond these punitive and deterrent interests to consider the ramifications of Jackson's

20  misconduct, it is apparent that there is simply no remedy for his actions; dismissal is the only

21  available response.

22          Jackson and his lawyers have read communications among and between

23  Microsoft executives, the Company's in-house lawyers, and outside counsel working on

24  Jackson's case. Jackson's claims were the subject of these communications. Neither Jackson,

25  nor his lawyers, nor other individuals to whom he has shown the stolen, privileged information,

26

DEFENDANT MICROSOFT CORPORATION'S                    -14-         PAUL, HASTINGS, JANOFSKY & WALKER LLP
MEMORANDUM IN SUPPORT OF ITS MOTION TO                            555 South Flower Street, Suite 2300
DISMISS WITH PREJUDICE ALL CLAIMS OF                             Los Angeles, California 90071-2371
PLAINTIFF RAHN JACKSON                                           Telephone (213) 683-6000
                                                                Facsimile (213) 627-0705

1   can be expected to forget what they have read, or to compartmentalize their understanding of

2   these communications in a way that "walls off" the information they have obtained by Jackson's

3   illegal conduct.  In affirming the dismissal of a case where a plaintiff alleging sexual harassment

4   took a privileged memorandum belonging to defense counsel and shared it with her attorney, the

5   New York Court of Appeals stated:

6
7
8
9

> Clearly neither suppression of the documents nor suppression of the information was a realistic alternative.  Nor would disqualification of plaintiff's counsel have ameliorated the prejudice, in that the wrongdoing and the knowledge were the client's own, which she would carry into any new attorney-client relationship

10   Lipin v. Bender, 644 N.E.2d 1300, 1304 (N.Y. 1994).

11         The law recognizes that, once exposed to stolen information, the reader is forever

12   tainted and the crime continues, buried in the information forever stored in the mind.  E.g., Ed

13   Nowogroski Insurance, Inc. v Michael Rucker, 137 Wash. 2d 427, 445 (1999) ("The Uniform

14   Trade Secrets Act does not distinguish between written and memorized information.  The Act

15   does not require a plaintiff to prove actual theft or conversion of physical documents embodying

16   the trade secret information to prove misappropriation.").  Certainly that kind of irrevocable

17   exposure has happened here.  No matter how limited Jackson's or his counsel's review of the

18   documents might have been, what they saw and read is with them forever.

19         For all of these reasons, there is no viable alternative to dismissal.  Any less

20   vigorous response will encourage other litigants to embark on similar schemes, reward (or, at

21   least, leave unpunished) Jackson's unapologetic misconduct, and severely prejudice Microsoft,

22   which would be left to defend against a claim where its adversaries have been privy to legal

23   advice Microsoft attorneys offered its client in this very matter.  Dismissal is required.

24   **IV.   CONCLUSION**

25         Plaintiff Rahn Jackson methodically planned and implemented a criminal scheme

26   intended, as an initial matter, to thwart the legitimate discovery processes of this Court and

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

-15-

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   unfairly advantage himself. His scheme having come to light, he trumpets the virtues in his

2   crimes and declares that he has every intention of using the fruits of that scheme to his own

3   benefit  Such a bold and defiant disregard of this Court's authority demands the most vigorous

4   response within the Court's authority.  Jackson's claims should be dismissed with prejudice.

5

6   //

7   //

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT MICROSOFT CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO          -16-
DISMISS WITH PREJUDICE ALL CLAIMS OF
PLAINTIFF RAHN JACKSON

PAUL, HASTINGS, JANOFSKY & WALKER LLP
555 South Flower Street, Suite 2300
Los Angeles, California 90071-2371
Telephone  (213) 683-6000
Facsimile  (213) 627-0705

1   DATED:  August 2, 2001          Respectfully submitted,

2

3                                   _Nancy L. Abell_

                                    Nancy L. Abell
4                                   Patricia M. Berry
                                    Appearing Pro Hac Vice
5                                   Paul, Hastings, Janofsky & Walker LLP
                                    555 South Flower Street, 23rd Floor
6                                   Los Angeles, CA  90071-2371
                                    Phone.  (213) 683-6162
7                                   Fax:  (213) 627-0705

8

9                                   _Kirk Bateman_  WSBA 19262  for

                                    Kirk A. Dublin, WA State Bar # 05980
10                                  Preston Gates Ellis, LLP
                                    701 Fifth Avenue, Suite 5000
11                                  Seattle, WA  98104-7078
                                    Phone:  (206) 623-7580
12                                  Fax:  (206) 623-7022

13
                                    Barbara B. Brown
14                                  Neal Mollen
                                    Appearing Pro Hac Vice
15                                  Paul, Hastings, Janofsky & Walker LLP
                                    1299 Pennsylvania Avenue, N.W., 10th Floor
16                                  Washington, D.C.  20004
                                    Phone:  (202) 508-9551
17                                  Fax:  (202)  508-9700

18
                                    William Murphy, Jr
19                                  William H. Murphy, III
                                    William H. Murphy, Jr. & Associates
20                                  12 West Madison Street
                                    Baltimore, Maryland  21201
21                                  Phone: (410) 539-6500
                                    Fax:  (410) 539-6599
22

23                                  *Counsel of Defendant*

24

25

26

DEFENDANT MICROSOFT CORPORATION'S              -17-          PAUL, HASTINGS, JANOFSKY & WALKER LLP
MEMORANDUM IN SUPPORT OF ITS MOTION TO                                555 South Flower Street, Suite 2300
DISMISS WITH PREJUDICE ALL CLAIMS OF                                  Los Angeles, California 90071-2371
PLAINTIFF RAHN JACKSON                                                    Telephone  (213) 683-6000
                                                                         Facsimile  (213) 627-0705