UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

RAHN D. JACKSON, et al.,
Plaintiffs,

v.

MICROSOFT CORPORATION,
Defendant.

CASE NO C01-775

FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 1 0 2001  **MR**

AT SEATTLE
CLERK U.S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

CC: TO JUDGE

## **PLAINTIFF, RAHN JACKSON'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Dated this 10th day of September, 2001.

Respectfully submitted,



Rob Williamson, WSBA No. 11387
WILLIAMSON & WILLIAMS
811 First Avenue, Suite 201
Seattle, WA 98104
Ph: (206) 587-6834
Fax: (206) 587-6835

And

Dana Tucker, Esq.
Pro Hac Vice
GARY, WILLIAMS, PARENTI, FINNEY,
LEWIS McMANUS, WATSON & SPERANDO
Waterside Professional Building
221 East Osceola
Stuart, Florida 34994
Tel. (561) 283-8260
Fax (561) 221-2177
Attorneys for Plaintiffs

1


CV 01-00775 #00000086

ORIGINAL


WILLIAMSON & WILLIAMS
LAWYERS
811 First Avenue - Suite 201  Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

## **TABLE OF CONTENTS**

TABLE OF AUTHORITES ................................. .. ... ........................... .. .. iv

I.      INTRODUCTION . . ............ . .................... . . .. .......... .. ......... 1

II.     ARGUMENT ..... . . ............. . ....................... . . ............. . ........ 3

    A. Jackson Immediately Relinquished All Documents
         And Electronic Data To Microsoft That Could Possibly Be
         Considered Attorney-Client Privileged, Trade Secrets,
         Or Proprietary Property ....... . ................. ... ............... .. 3

       1. The Documents Were Returned Prior To
            Jackson Reading Or Viewing The Majority Of
            The Documents . ................ . ....... ............... .. . 4

    A. Defendant's Assertion that Jackson Was Untruthful
         About How He Received The CD Rom Is Derived From Its
         Continuing Effort Quote Jackson's Deposition Testimony
         Out Of Context ........... . . . .................... .. . ................ 4

    B. Defendant's Assertions Jackson Knowingly Received
         Stolen Property And Would Do So Again Is Wholly Inaccurate ..... 6

    C. Jackson's Submission Of Documents From The CD Rom
         To His Attorney Was In Response To Defendant's Production
         Request And Not For The Purpose Of Devising A Legal Strategy. ... 6

       1. None Of The Documents Were Used For Litigation
            Strategy ... .. . ........................... .. . . .................. 8

    D. Portions Of Email Jackson Failed To Provide To
         Defense Counsel Are Neither Relevant To His Claim Or
         Microsoft's Defense ......... .... . . ......... ................. 8

       F. Microsoft's Attempt To Allege Jackson Stole Information
    From A Hard Drive It Sold To Jackson Is Completely
    Without Merit ................. .. .... ... ............................. 10

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201   Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

    G  Defendant's Allegations Jackson Is Guilty Of Criminal
Conduct And Therefore His Complaint Should Be Dismissed Is
Wholly Without Merit .......  . .  ..............  ...........     11

    H.    Even If Jackson Was Guilty Of Some Type Of
Misconduct, Dismissal Would Be An Abuse Of Discretion ..........     12

III.   CONCLUSION .... ................ . ...............  . ............... . . .......     14

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201   Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

## TABLE OF AUTHORITIES

**CASES**

Anheuser-Busch, Inc. v. Natural Beverage Distributors,
69 F.3d 337 (9th Cir. 1995) .............................................................. 14

BFOW, Inc. v. Hurt (In re Hurt),
2000 U.S. App. LEXIS 1861 (9th Cir. 2000) ........................................ 13

Byrnie v. Town of Cromwell,
243 F.3d 93, 107 (2nd Cir. 2001) ........................................................ 9

Fayemi v. Hambrecht & Quist, Inc.,
174 F.R.D. 319, 1997 U.S. Dist. LEXIS 11189 (S.D.N.Y August 1, 1997) ........ 11, 12

Saul v. Tivoli Systems, Inc.,
97 Civ. 2386, 2001 U.S. Dist. LEXIS 9873 (S.D.N.Y July 16, 2001) ............ 5, 9

Seattle Northwest Sec. Corp. v. SDG Holding Co.,
61 Wn. App. 725; 812 P.2d 488 (1991) ................................................ 3

United States v. Martin,
228 F.3d 1 (1st Cir. 2000) ................................................................ 12


**OTHER**

Federal Rule Of Civil Procedure 26(b)(1) ............................................ 8, 11

ABA Formal Opinion No. 94-382 (July 5, 1994) ....................................... 7

Arizona Opinion No. 2001-04 (March 2001) ........................................... 7

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201   Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

## I. INTRODUCTION

On January 3, 2000, Plaintiff, Rahn D. Jackson, joined by Tanya D. Barbour, Jozette Joyner, Derrick Washington, James Pipkins, Pamela Odom, and Chima Echeruo filed a Second Amended Complaint (hereinafter referred to as the "Jackson Complaint") seeking to represent a nationwide class of current and former African-American employees of Defendant Microsoft Corporation ("Microsoft"). The Jackson Complaint alleges a pattern and practice of racial discrimination by Microsoft in violation of §1981 and Title VII.

On January 25, 2001, Defendant filed a Motion To Transfer Venue of the Jackson case to Washington State. On May 3, 2001, the U.S. District Court Judge for the District of Columbia transferred this case to Washington State.

Shortly after the Jackson case was transferred, Microsoft scheduled the deposition of Plaintiff Rahn Jackson on July 26 and 27, 2001. At Jackson's deposition, and as part of his response to Defendant's Request For Production, Rahn Jackson produced a CD Rom he received from a fellow employee at Microsoft whose identity is uncertain. [TR. 59:21-60;1-11] Rahn Jackson only suspects the person's identity. [TR. 60:12-16] Jackson also produced a small number of hard copies of documents from the CD Rom, which he mailed to his counsel several days before his scheduled deposition. Time constraints prevented anyone from counsel's law firm from reviewing the documents prior to the day of the deposition.

Immediately prior to the beginning of the deposition, plaintiff's counsel, for the first time, quickly skimmed the hard copies of some of the documents to determine if any appeared to be privileged. The headers indicated certain documents were communications between Microsoft attorneys and Microsoft employees regarding Jackson. Without any further review, the

1

documents were immediately handed over to defendant's counsel Jackson or his counsel retained no copies. Additionally, the CD Rom was turned over to a third party neutral. Jackson stated he only viewed a limited number of documents on the CD Rom that personally involved him. It should be noted the CD Rom contained over 10,000 documents and neither Jackson, his counsel, or Microsoft itself has had the time to view all the documents to know their contents.

When Jackson terminated his employment with Microsoft, he purchased his work computer from Microsoft. The hard drive on the computer contained more than 34,000 files that Microsoft now claims belong to them. The hard drive was turned over to a third party neutral to determine the contents of the hard drive.

It is from this set of facts and Microsoft's keen ability to distort Jackson's deposition testimony that it forms a basis for its Motion To Dismiss With Prejudice All Claims Of Plaintiff Rahn D. Jackson. Microsoft alleges two points: 1. That Jackson improperly received the CD Rom containing documents that were attorney-client privilege information, trade secrets, or proprietary information, and 2. Jackson "destroyed" evidence. In its Memorandum In Support Of Its Motion, it is blatantly clear that Microsoft extracted portions of Jackson's deposition and used other portions out of context in an attempt to bolster their otherwise unsubstantiated argument.

## II. ARGUMENT

### A. Jackson Immediately Relinquished All Documents And Electronic Data To Microsoft That Could Possibly Be Considered Attorney-Client Privileged, Trade Secrets, Or Proprietary Property

Defendant has attempted to paint a picture much more sinister than the facts support. Contrary to the assertions and innuendos contained in Defendant's Motion To Dismiss and

2

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201 Seattle, Washington 98104
Telephone (206) 587-6834  Fax (206) 587-6835

supporting Memorandum, Jackson did not solicit attorney-client privilege information or proprietary information. Nor is there *any* evidence Jackson used or intended to use trade secret information obtained about Microsoft in his job at Sun Microsystems or anywhere else However, Microsoft attempts to divert the Court's attention and imply it through innuendo.

"The attorney-client privilege only applies to communications that are intended by the party to be confidential. *Ramsey v Mading*, 36 Wn.2d 303, 312, 217 P.2d 1041 (1950); *see also State v Sullivan*, 60 Wn.2d 214, 217-18, 373 P.2d 474 (1962). Therefore, if the communication is intended to be disclosed to others, it is not protected by the attorney-client privilege. *Sullivan*, 60 Wn.2d at 217-18." Seattle Northwest Sec. Corp. v. SDG Holding Co., 61 Wn App 725, 812 P.2d 488 (1991). In the case before this Court, it is unclear if the communications on the CD Rom are privileged because counsel has no idea what the contents of the documents are [See Declaration of Roy J. Bucholtz] What is clear is many of the documents were disseminated over Microsoft's network and therefore viewed by many in the company The same would be true for trade secrets, if in fact any of the documents on the CD Rom contained trade secrets

    1.    **The Documents Were Returned Prior To Jackson Reading Or Viewing The Majority Of The Documents**

It should be noted the CD Rom contained over 10,000 documents, and possibly over 20,000 documents. Neither Jackson, his counsel, or Microsoft itself has had the time to view all the documents to know their contents. Jackson at most, did a name search for documents relating to him and his employment at Microsoft. [See Declaration of Jackson]

    B.    **Defendant's assertion that Jackson Was Untruthful About How He**

3

### Received The CD Rom Is Derived From Its Continued Effort In Misquoting Jackson's Deposition Testimony And Using It Out Of Context

Microsoft alleges in its Motion that Jackson lied about how he received the CD Rom. They cite partial deposition testimony that read alone appears to substantiate their ill-fated attempt at this misrepresentation. However, upon a complete reading of Jackson's testimony, it is patently clear that the "help" Jackson sought was not a request of someone to provide him with a stolen CD Rom. Jackson specifically stated in response to the Defendant's inquiry:

> A.   Did I ask someone to prepare this CD for me? Not directly.
>
> A.   Again, this wasn't a situation where I went directly to this person and said I need help to do something. I think it was in a casual conversation, hey Rahn, I heard about your situation. Yeah, unfortunately. You know, if there is anything you can do for me, let me know, or watch my back, or something like that.
>
> [TR. 56:19-21; 57:1-21; 58:1-6]

Nowhere in Jackson's deposition does he testify to asking for the "help" that Defendant attempts to mislead the Court to believe.

Microsoft proceeds in its assertions of partially quoting and misquoting Jackson in its Motion by alleging that "After making these statements under oath, Jackson back-peddled, suddenly claiming that he did not know who provided him with the CD Rom. In fact, Jackson directly told Defendant that although he could speculate, he did not _know_ who the CD Rom came from [TR. 59:21; 60:1-5; 60:14] There was no back peddling by Jackson in the deposition.

In <u>Saul v. Tivoli Systems Inc.</u>, 97 Civ 2386, 2001 U.S. Dist. LEXIS 9873 (S D N Y July 16, 2001), a similar, but much more egregious set of facts than defendant tries to paint in this action, the defendant asked the court to dismiss the action based on, inter alia, plaintiff's apparent misstatements in his deposition. The court stated:

4

As for plaintiff's apparent misstatements in his testimony, we of course do not countenance untruthfulness, particularly when under oath, although we suspect that such conduct occurs more often than we may be comfortable to acknowledge. ...The more common process for dealing with seemingly untruthful testimony, however, is to subject the witness to effective cross-examination and other forms of impeachment, a process that in this instance appears already to have produced results, and presumably holds promise of doing so at trial More specifically, to the extent that plaintiff may have uttered falsehoods under oath, those instances may be used at trial to impeach his credibility. Thus, any failure on his part to adhere to the truth may be dealt with by the adversarial process itself. Id. at 21.

The court continued by pointing out:

...the determination of whether a party or other witness has deliberately falsified testimony or simply erred (whether or not influenced by self-interest) is a difficult and necessarily somewhat speculative exercise Given that uncertainty, as well as the accepted judicial policy favoring resolution of cases on their merits, . . and the plaintiff's Seventh Amendment right to a jury trial, we are reluctant to shortcircuit his ability to present the merits of his case unless his pre-trial conduct clearly and irremediably precluded a fair trial. ...although we conclude that plaintiff engaged in at least some deliberate falsity in his testimony, the extent to which his answers were deliberate lies, as distinguished from what might be described as wishful thinking or simply monumental sloppiness of recollection or simple errors, could be a fair ground for debate. In such circumstances we deem it appropriate to let the jury judge his credibility on a complete record. Id. at 19,20.

In the case before this court, defendant has extracted and pasted various passages, some unrelated, from the transcript of 20 hours of deposition to arrive at a preposterous conclusion that Jackson willfully lied.

C. **Defendant's Assertions Jackson Knowingly Received Stolen Property And Would Do So Again Is Wholly Inaccurate**

Defendant has extracted seven questions and their answers from four separate pages of the deposition transcript [Defendant's Memorandum Of Law; pages 6-7] to allege Jackson knowingly received stolen property [the CD Rom] and knew it was against the law. However what defendant's counsel has really shown is how an accomplished defense counsel

5

can ask a series of questions, assume facts not answered, and arrive at a vague enough final answer to claim victory.

### D. Jackson's Submission Of Documents From The CD Rom To His Attorney Was In Response To Defendant's Production Request And Not For The Purpose Of Devising A Legal Strategy.

Subsequent to the Jackson case being transferred to Washington State, Defendant propounded a Request For Production Of Documents. As a result of that request, Jackson's counsel forwarded such request to Jackson and asked that he respond accordingly. Shortly thereafter, counsel contacted Jackson to follow up on the receipt of the information since Jackson's deposition was fast approaching. During this time, Jackson informed his attorney of the existence of the CD Rom. Prior to this disclosure, Jackson's attorneys had no knowledge of the existence of the CD Rom or any documents copied therefrom. In response to Defendant's production request, Jackson produced a small number of hard copies of documents from the CD Rom, which he mailed to his counsel several days before his scheduled deposition.

Immediately prior to the deposition, counsel for Jackson became aware of the CD Rom and the fact that some of the documents received in counsel's office a few days before, were copied from it. At the deposition, plaintiff's counsel, for the first time, quickly skimmed the documents to determine their contents. Only at that moment did counsel for Jackson notice the headers indicated certain documents were between Microsoft attorneys and Microsoft employees regarding Mr. Jackson. The documents were immediately handed over to defendant's counsel No copies were retained by Jackson or his counsel. Additionally, the CD Rom was turned over to a third party neutral. Jackson stated he only viewed a limited number of documents on the CD Rom, those being documents he could find relating to his treatment at Microsoft. Again, it

6

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201 Seattle, Washington 98104
Telephone (206) 587-6834 Fax. (206) 587-6835

should be noted the CD Rom contained over 10,000 documents and nether Jackson, his counsel, or Microsoft itself have been able to devote the time or resources necessary to view all the documents to determine their contents  Upon realization of the source of the documents, Jackson's counsel followed the guidelines set forth in ABA Formal Opinion No. 94-382 (July 5, 1994) and adopted by Arizona Opinion No. 2001-04 (March 2001) in a case whose facts are astonishingly similar.

In the Arizona opinion, a client of a race discrimination case had given her attorney copies of documents which appeared to be attorney client privileged (from ex-employer to ex-employer's attorney regarding the client). These documents had been provided to the client by an ally who was still employed at the company. The Arizona Committee on the Rules of Professional Conduct stated that the lawyer is obligated to:

2. Refrain from further examination

3. Notify opposing counsel

4. Abide by counsel's instructions or seek a ruling from the court as to whether the documents may be kept or used

Jackson's attorneys have acted properly. This is surely not the type of discovery abuse recognized by the courts as grounds for dismissal

### 1.    None Of The Documents Were Used For Litigation Strategy

Defendant's attempt to make this bold and unsubstantiated assertion that Jackson gave the documents to his counsel to use in devising their litigation strategy. Jackson's counsel only came into possession of these documents because of a Request To Produce under general directions from his counsel to produce everything in his possession. Jackson's initial complaint

7
WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue · Suite 201  Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

was filed on June 20, 2000, and on August 25, 2000, a Meet And Confer Report pursuant to L Cv.R. 16.3 (U.S District Court Rules for the District of Columbia) was entered. Any litigation strategy developed by Jackson's counsel was devised long ago and consists of showing that Microsoft engaged in specific acts of discrimination against Mr. Jackson and maintained a pattern and practice of racial discrimination

### E. Portions Of E-mail Jackson Failed To Provide To Defense Counsel Are Neither Relevant To His Claim Or Microsoft's Defense

The amendment to rule 26(b)(1) of the Federal Rules Of Civil Procedure limits discovery to matters "relevant to the claim or defense of any party " The advisory committee notes state there is no entitlement to discovery to develop new claims or defenses not already identified in the pleadings. This amendment, as well as the others, went into effect December 1, 2000 Under this standard, Microsoft would not be entitled to the identity of the sender since it would not be "relevant to the claim or defense of any party."

Jackson admits to cutting or tearing off the names of individuals that appear on E-mails he received from other Microsoft employees. [TR. 408:14-17] Jackson testified he did this to protect the identity, and thereby the careers, of some current Microsoft employees. [TR. 409:7-16; 410:12-21; 412:18-21; 416:2-5, 417:10] None of the alterations affected the substance of the documents and the identity of the sender is not relevant to whether Microsoft engaged in discrimination against Jackson. [TR. 409:7; 410:1-21] It can only be assumed Microsoft deems this information important to engage in some form of retaliation against the sender.

Once again, if the deposition testimony is reviewed in its entirety as opposed to the piecemeal manner in which defense counsel misleadingly presents to the Court, it is apparent that the information that was removed from the E-mails was only names of the senders. Opposing

8

WILLIAMSON & WILLIAMS
LAWYERS

811 First Avenue - Suite 201   Seattle, Washington 98104
Telephone (206) 587-6834   Fax (206) 587-6835

counsel tries to lead the Court to believe that Jackson's comment that he cut off "the most important information that [he] wanted to conceal from [Microsoft]" contained substantive information. The plain truth is that it did not. More importantly, spoliation is "the *destruction or significant alteration* of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Byrnie v. Town of Cromwell, 243 F.3d 93, 107 (2nd Cir. 2001) (quoting West v. Goodyear Tire & Rubber Co., 167 F 3d 776, 779 (2nd Cir. 1999)).[*emphasis added*] Jackson's removal of the names of the E-mail senders does not constitute the destruction or substantial alteration of the document. Considering these documents were all generated through Microsoft, Microsoft most definitely has access to such information if they chose to use it as evidence.

In Saul v. Tivoli Systems. Inc., 97 Civ. 2386, 2001 U.S. Dist. LEXIS 9873 (S.D.N.Y. July 16, 2001), the court dealt with *destruction* of evidence. In that case, responding to a motion to dismiss, the court stated:

> Even if a party is found to have acted willfully, in bad faith or with gross negligence, the courts have more commonly looked to less extreme forms of remediation, such as a missing evidence charge, an instruction that the jury may or must draw an inference in favor of the disadvantaged party on a particular issue, or the preclusion of evidence. See, e.g., Zimmermann v. Associates First Capital Corp., 251 F.3d 376, 383-84 (2d Cir. 2001) Byrnie, 243 F.3d at 107-08; Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. N.Y. 1999); Barsoum, 2001 WL 332956, Id. at 7.

In the case before this court, there was no destruction of evidence that is relevant to whether Microsoft engaged in specific acts of racial discrimination against Jackson. In fact, there was no destruction of evidence at all.

///

///

9

### F. Microsoft's Attempt To Allege Jackson Stole Information From A Hard Drive It Sold To Jackson Is Completely Without Merit

Once again Microsoft takes two sentences from a 20 hour deposition and uses them to bolster an issue where there is none. Microsoft claims that "during an exit interview, Jackson expressly told the Microsoft Human Resources Representative that he had returned all of Microsoft's property except for a printer." If one only reads this one sentence, it may appear valid. However, upon review of additional testimony regarding this issue, it is apparent the above sentence does not present a complete picture. Prior to Jackson's departure from Microsoft, he purchased his computer from Microsoft. [TR. 50:6-21; 51:1-11] This purchase was a legitimate purchase made through a Microsoft administrator. [TR 51:9-18] However, due to Microsoft's negligence, prior to the purchase Microsoft failed to remove, erase, or back up the hard drive from the computer. [TR. 51:16-21] Upon defense counsel questioning this purchase, Jackson in no way tried to mislead defense counsel. He specifically told defense counsel that he would present the hard drive to Microsoft so they could do now what they should have done years ago. [TR. 51:1-16] In addition to the computer, Jackson had a printer that he specifically informed Microsoft of and also told them they could pick it up. However the printer remains in Jackson's possession just like the hard drive that Microsoft has failed to obtain to this very day. [TR. 427:9-20] Microsoft's current attempt to allege Jackson stole these items is preposterous.

In the case before this court, the Defendant's "exit interview" consisted of a five-minute telephone conversation about the return of the laptop, which Jackson then purchased from Microsoft. [See attached Jackson Declaration] There was no attempt by Microsoft to first erase

10

or replace the hard drive, as one would expect if the information were "trade secret" or "proprietary." Surely this cannot be discovery abuse.

### G. Defendant's Allegations Jackson Is Guilty Of Criminal Conduct And Therefore His Complaint Should Be Dismissed Is Wholly Without Merit

In <u>Fayemi v Hambrecht & Quist, Inc.</u>, 174 F.R.D 319, 1997 U S Dist. LEXIS 11189 (S.D.N.Y. August 1, 1997), the plaintiff, on the weekend immediately after his dismissal, entered defendant's offices and obtained information about employee bonuses from the computer files The defendants contended that this constituted theft, and they moved pursuant to Rule 26(c) of the Federal Rules of Civil Procedure for dismissal of the complaint or, in the alternative, for an order precluding the plaintiff from utilizing the stolen information in this litigation  The court noted, "... dismissal with prejudice is a 'drastic remedy that should be imposed only in extreme circumstances.' <u>Salahuddin v. Harris, 782 F.2d 1127, 1132 (2d Cir. 1986);</u> see also <u>Quiles v. Beth Israel Medical Center, 168 F.R.D. 15, 18 (S.D.N.Y. 1996).</u> Here there is little, if any, continuing prejudice to the defendants." The court also pointed out "... the bonus data, though confidential, would certainly have been subject to disclosure during the normal course of discovery. Accordingly, there is no prejudice to the defendants sufficient to warrant dismissal See <u>Sigmon v. Parker Chapin Flattau & Klimpl, 901 F. Supp. 667, 683 (S.D.N.Y. 1995)</u> (employment discrimination plaintiff's damages not limited despite misappropriation of defendant's documents where they consisted of non-privileged materials available in discovery). " <u>Id.</u> at 6.

Mere access to confidential information is not a crime. "...either some articulable harm must befall the holder of the information as a result of the defendant's activities, or some gainful use must be intended by the person accessing the information, whether or not this use is

11

profitable in the economic sense." United States v. Martin, 228 F.3d 1 (1st Cir. 2000) In the case before this court, the only benefit to Plaintiff or detriment to Defendant Microsoft can articulate is the fact Jackson is suing Microsoft for money damages

### H. Even If Jackson Was Guilty Of Some Type Of Misconduct, Dismissal Would Be An Abuse Of Discretion

The Ninth Circuit has set out a five-factor test for dismissal. The five relevant factors are as follows:

> (1) the public's interest in expeditious resolution of litigation;
> (2) the court's need to manage its docket;
> (3) the risk of prejudice to the defendants;
> (4) the public policy favoring disposition of cases on their merits; and
> (5) the availability of less drastic alternatives.
>
> BFOW, Inc. v Hurt (In re Hurt), 2000 U.S. App. LEXIS 1861 (9th Cir. 2000)

The Ninth Circuit has stated, "We can affirm [a dismissal] if four factors weigh in favor of dismissal, or three factors weigh strongly in favor of dismissal. Where a court order is violated, the first two factors support sanctions and the fourth factor cuts against a default. Therefore, it is the third and fifth factors that are decisive " BFOW, Inc. v. Hurt (In re Hurt), 2000 U.S. App. LEXIS 1861 (9th Cir 2000)

The Ninth Circuit also said "Dismissal. . . is so harsh a penalty it should be imposed as a sanction only in extreme circumstances." Id. at 5. The Court noted two ways discovery violations could threaten to interfere with a rightful decision in a case.

> First, a party's discovery violations may present a "'pattern of deception . . . [that makes] it impossible' for the district court to conduct a trial 'with any reasonable assurance that the truth would be available.'" Even a single violation of a discovery order can be justification for dismissing a case under our cases if critical documents are being withheld, and the integrity of the entire process is called into question. Second, a party's repeated failure to comply with orders compelling production may threaten the rightful resolution by preventing the other party from

12

preparing for a fast-approaching trial date. <u>BFOW, Inc v. Hurt (In re Hurt)</u>, 2000 U S App. LEXIS 1861

Neither of the two scenarios is present in the case before this court. "Due process concerns further require that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression 'threatens to interfere with the rightful decision of the case.' <u>Wyle v R.J. Reynolds Indus., Inc , 709 F.2d 585, 591 (9th Cir. 1983)</u>; see also <u>Phoceene Sous-Marine, S A v U S Phosmarine, Inc , 682 F.2d 802, 806 (9th Cir. 1982)</u> (holding default entry violated due process where the sanctioned party's deception was wholly unrelated to the merits of the controversy)" Anheuser-Busch, Inc. v. Natural Beverage Distributors, 69 F.3d 337 (9th Cir. 1995)

Last, the Ninth Circuit has said.

> In determining whether a district court has properly considered the adequacy of less drastic sanctions before dismissing a party's case, we consider (1) whether the district court explicitly discussed the feasibility of less drastic sanctions and explained why such alternate sanctions would be inappropriate; (2) whether the district court implemented alternative sanctions before ordering dismissal; and (3) whether the district court warned the party of the possibility of dismissal before ordering dismissal. *Adriana Int'l Corp , 913 F.2d at 1412-13.*
> Anheuser-Busch, Inc. v Natural Beverage Distributors 69 F.3d 337 (9th Cir. 1995)

Based on the above, any dismissal of Jackson's claims would be an abuse of discretion.

### III.  CONCLUSION

Microsoft alleges two points; 1   that Jackson received stolen documents that contained attorney-client privileged information, trade secrets, or proprietary information, and 2. Jackson "destroyed" evidence.   Neither is true.

13

Jackson immediately relinquished all documents and electronic data to Microsoft that could possibly be considered attorney-client privileged, trade secrets, or proprietary property. The documents were returned before Jackson read or viewed the majority of the documents.

Defendant's assertion that Jackson was untruthful about how he received the CD Rom is derived from its continuing effort to quote Jackson's deposition testimony out of context. Defendant's assertions Jackson knowingly received stolen property and would do so again is wholly inaccurate.

Jackson's submission of documents from the CD Rom to his attorney was in response to Defendant's production request and not for the purpose of devising a legal strategy. None of the documents were used for litigation strategy.

Portions of Email Jackson failed to provide to defense counsel are neither relevant to his claim or Microsoft's defense. Microsoft's attempt to allege Jackson stole information from a hard drive it sold to Jackson is completely without merit. Defendant's allegations Jackson is guilty of criminal conduct and therefore his complaint should be dismissed is wholly without merit. Even if Jackson were guilty of some type of misconduct, dismissal would be an abuse of discretion.

14

For all of the foregoing reasons, Plaintiff asks this Court to deny Defendant's Motion.

Dated this 10th day of September, 2001.

Respectfully submitted,

*[signature]*

Rob Williamson, WSBA No. 11387
WILLIAMSON & WILLIAMS
811 First Avenue, Suite 201
Seattle, WA 98104
Ph: (206) 587-6834
Fax: (206) 587-6835

And

Dana Tucker, Esq.
Pro Hac Vice
Laura L. Mall, Esq.
Pro Hac Vice
GARY, WILLIAMS, PARENTI, FINNEY,
LEWIS McMANUS, WATSON & SPERANDO
Waterside Professional Building
221 East Osceola
Stuart, Florida 34994
Tel. (561) 283-8260
Fax (561) 221-2177

Attorneys for Plaintiffs

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was served, this 10th day of September, 2001 to counsel for Defendant Microsoft Corporation as follows:

Nancy L. Abell
Patricia Berry
Appearing Pro Hac Vice
Paul, Hastings, Jonofsky & Walker LLP
555 South Fowler Streeet, 23rd Floor
Los Angeles, CA 90071-7078

Kirk A. Dublin
Preston Gates Ellis, LLP
701 5th Avenue, Suite 5000
Seattle, WA 98104-7078

Richard Sauer, Esq.
Microsoft Corporation
One Microsoft Way
Building 8/2062
Redmond, WA 98052-6399

Barbara A. Brown
Appearing Pro Hac Vice
Paul, Hastings, Jonofsky & Walker LLP
1299 Pennsylvania Avenue N.W., 10th Floor
Washington, D.C. 20004

William Murphy, Jr.
William H. Murphy, III
William H. Murphy, Jr. & Associates
12 Madison Street
Baltimore, MD 21201

Counsel for Defendant

_____
Rob Williamson

WILLIAMSON & WILLIAMS
LAWYERS
811 First Avenue - Suite 201  Seattle, Washington 98104
Telephone (206) 587-6834  Fax (206) 587-6835